**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MARK FALK**<br>**UNITED STATES MAGISTRATE JUDGE** | **USPO & COURTHOUSE**<br>**1 FEDERAL SQ., ROOM 457**<br>**NEWARK, NJ 07101**<br>**(973) 645-3110** |

**LETTER OPINION AND ORDER**

April 23, 2020

**TO ALL COUNSEL OF RECORD**

> Re:  **JKSoft, Inc. Innoas, Inc. *et al*.,**
>      **Civil Action No. 18-199 (WJM)**

Dear Counsel:

Before the Court is Defendants/Third-party Plaintiffs' motion for a protective order.[1] (CM/ECF No. 26.)  The motion is opposed. The motion is decided on the papers. Fed.R.Civ.P. 78(b).  For the reasons set forth below, the motion is **granted in part, and denied in part without prejudice.**

**Background**

This is a trademark and copyright infringement case.  Plaintiff JKSoft, Inc. ("JK") claims it is the owner of Point of Sale software[2] ("POS software") and product licensing/activation keys ("Keys") for the software.  (Comp. ¶¶ 2, 11.)  According to JK, the POS software and Keys were created and developed by Jae H. Kang ("Kang"), JK's

---

[1] Defendants move pursuant to Fed. R. Civ. P. 26(c) and Local Civ. R. 5.3.
[2] The names of the POS software include JKRestaurant, JKRetail and JKSalon.  (Compl. ¶ 2.)

owner and principal. (Comp. ¶ 2.)  The Keys, which consist of a unique series of numbers and letters, must be entered into an end-user's computer in order to run the POS software.[3] JK alleges that Defendant Innoas, Inc. (Innoas") and its principal, Defendant Noah Lee ("Lee")[4], unlawfully sold and distributed JK's POS software and Keys. (Comp. ¶¶ 2, 11.) Specifically, JK alleges that Lee stole a pre-2012 version of the source code to the Keys, and that Defendants have been unlawfully selling the POS software together with the counterfeit and pirated Keys, allowing purchasers of the pirated material illegal access to the full version of JK's software.  (Comp. ¶ 3.)

Plaintiff filed a 15-count Complaint against Innoas and Lee asserting, *inter alia*, claims for copyright infringement[5], common law trademark infringement, violations of the Computer Fraud and Abuse Act[6] and Digital Millennium Copyright Act[7], as well as other federal statutory and state law claims.  Defendants filed an Answer and a 21-count Counterclaim/Third-party complaint against JK and Kang asserting claims for, among other things, breach of contract, tortious interference with business relationships, negligent misrepresentation, and a single count for copyright infringement.[8]  Defendants' claims primarily sound in breaches of duty and misrepresentation/fraud arising largely out of an alleged business partnership with JK.

**Current Dispute**

The parties agree that a Discovery Confidentiality Order ("DCO") should be entered to protect confidential information at issue in this case.  The crux of the parties' dispute relates to the scope and manner of the confidential information to be produced by Plaintiff in this litigation.[9]  In particular, the parties are unable to agree on which source codes are to

---

[3] A Key is akin to a serial number and is typically used by software developers to protect their intellectual property. from piracy. (Comp. ¶ 4.)
[4] Defendant is Seung Jai Yi a/k/a Noah Lee.
[5] 17 U.S.C. ¶¶ 101, 105.
[6] 18 U.S.C. ¶ 1030.
[7] 17 U.S.C. ¶ 1201.
[8] Defendants also assert a claim for vicarious and contributory copyright infringement.
[9] JK objects to: (1) the version of the source code to be produced; (2) the method/manner of production, and (3) the language of the confidentiality order.

be produced, even if they are subject to a DCO, and how such production should be made. Therefore, although styled as a motion for a protective order, Defendants' application is more akin to a motion to compel.

By way of this motion, Defendants seek access to all of JK's POS software source codes.  JK refuses to produce all of the codes and seeks to limit production to a source code developed before 2013.  JK claims that Lee stole a pre-2012 version of the source code and has been selling the older version of the POS software.  Plaintiff is concerned that if Lee is permitted to gain access to JK's newer source codes[10], Lee would be able to upgrade the older, allegedly pirated-version of the software and unlawfully sell it too, causing JK further economic damage.  Since JK believes that Lee already possesses the older source code (having obtained it allegedly by theft), JK is amenable to permitting Defendants' experts to visually inspect the earlier version of the source code—just prior to 2012—but not the latter.  JK is not agreeable to allowing expert access to the updated, current versions.  (PL.'s Br. 5.)  Defendants argue that they have asserted a claim for copyright infringement and therefore are entitled to access to all of the source codes.

**Legal Standard**

The Court has broad discretion in deciding discovery issues.  See Gerald Chamles Corp. v. Oki Data Americas, Inc., No. 07-1947, 2007 WL 4789040, at *1 (D.N.J. Dec. 11, 2007).  The appropriate scope of discovery and the management of discovery requests are left to the sound discretion of the Court.  See In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) (finding that conduct of discovery is committed to sound discretion of Court).

A party seeking to compel the production of a source code must demonstrate that it is relevant and necessary to the action.  See Congoo, LLC v. Revcontent LLC, 16-401, 2017 WL 3584205 (D.N.J. Aug. 10, 2017) (citing In re Apple & AT&TM Antitrust Litig.,

---

[10] According to JK, Kang has updated the source code through the years.  (Pl.'s Br. at 4.)  Kang claims that the version allegedly stolen by Lee was last updated sometime in or prior to 2012.  (Id.)

3

2010 WL 1240295 (N.D.Cal. March 26, 2010); Synopsys, Inc. v. Nassda Corp., 2002 WL 32749138 (N.D. Cal. Sept. 16, 2002)).  The relevancy and necessity requirements must be met, regardless of whether a discovery confidentiality order is in place.  See Congoo, LLC, 2017 WL 3584205 at *3.  A court will not be justified in ordering disclosure of a source code when alternatives are available.  See Congoo, LLC, 2017 WL 3584205 at *3-4 (citing Telspace, LLC v. Coast to Coast Cellular, Inc., 2014 WL 4364851, *4 (W.D. Wash. Sept. 3, 2014); Hartley Pen. Co. v. United States Dist. Ct. for S.D. Cal., 287 F.2d 324, 330-31 (9th Cir. 1961)).

**Decision**

    Because JK is willing to produce, subject to the entry of a DCO, source code or source code related materials for the period ending 2013, the real question before this Court is whether to compel, at this point in the litigation, Plaintiff to produce post-2013 source codes.  Defendants, the parties seeking the information, make the bald claim that because they have asserted a claim for copyright infringement and must defend against one, they are entitled to the source codes at issue.  At least at this juncture of the litigation, the Court disagrees.

    Based on the limited record before it, the Court cannot make a final determination as to whether the post-2013 source codes at issue are relevant and necessary to the adjudication of the claims and defenses in this case.  Defendants' affirmative claims arise out of an alleged existence of a business partnership between Kang and Lee.  Defendants' causes of action against JK and Kang sound primarily in breach of duty, tort, and defamation.  The source codes Defendants seek appear to have little, if any, relevance to the merits of these claims—or at least Defendants have not demonstrated that they do.  Of the 21 counts in Defendants' third-party pleading, only one is an infringement claim.  This sole infringement claim is based upon Defendants' allegation that Lee designed the "look and "feel" of the POS software which was used by JK. (Counter-claim ¶¶ 368-371.)  That appears to be the extent of the infringement claim as it relates to the development and

authorship of the POS software at issue. Defendants do not contend that they created the source code. Given these allegations, and based on the record before it, the Court is not persuaded that the post-2013 source codes are relevant and necessary for the prosecution of the claims and defenses, at least at this stage of the litigation.

      The Court may limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Given the highly proprietary nature of the latter created source codes, and the concerns expressed by Plaintiff regarding their disclosure, the Court, in an abundance of caution, finds that their confidentiality outweighs the need for their production at this point in the case. Given the proprietary nature of JK's source codes, which is not in dispute, and the irreparable harm that could occur if it is produced, the Court finds that production of the code is not warranted now, even with the entry of a DCO. See Viacom Int'l Inc. v. YouTube Inc., 253 F.R.D. 256, 260 (S.D.N.Y. July 1, 2008) ("the protections set forth in the stipulated confidentiality order are careful and extensive, but nevertheless not as safe as non-disclosure. There is no occasion to rely on them, without a preliminary proper showing justifying production of the search code") This is particularly the case as Defendants have not demonstrated that production of the source code is relevant or necessary to prove their claims or defend against Plaintiff's. It is conceivable, however, that after JK's production of the pre-2013 source code and review of it by Defendants' expert(s), it may be determined that the post-2013 source codes are relevant and necessarily discoverable in this litigation. Until then, the Court will proceed with caution in fashioning a remedy here.

      So, as a first step, the parties are directed to submit to the Court a proposed DCO which provides for the disclosure of the source codes Plaintiff is willing to produce as described by Plaintiff in its opposition to this motion. To the extent the parties disagree on the manner or form as to how the source code is to be produced, the parties should confer further on this issue. After the source code is produced, and the parties' respective experts have had an opportunity to review the material, either party may submit a brief letter to the

Undersigned advising of the need for the Court's assistance relating to the discoverability of additional source codes.

**SO ORDERED**.

               **s/Mark Falk**
               **MARK FALK**
               **United States Magistrate Judge**