**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JK SOFT, INC., a California Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>INNOAS, INC., SEUING JAI YI a/k/a NOAH LEE,<br><br>    Defendants. | Civil Action No.:<br>18-199 (WJM) (CLW)<br><br>OPINION AND ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

**WILLIAM J. MARTINI, U.S.D.J.**

### I.    BACKGROUND

On January 8, 2018—over seven years ago—plaintiff JK Soft, Inc. brought this action against defendants Innoas, Inc. ("Innoas") and its principal Noah Lee (f/k/a Seung Jai Yi) ("Lee") alleging that Innoas, acting through Lee, pirated plaintiff's software program and resold copies of the program and counterfeited access keys ("Keys") without authorization. The fifteen-count complaint includes claims for copyright infringement, common law trademark infringement, trademark dilution under New Jersey state law, violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030), violation of the Copyright Act (17 U.S.C. § 501), violation of the Digital Millenium Copyright Act (17 U.S.C. § 1201) ("DMCA"), violation of the Federal Defense of Trade Secret Act (18 U.S.C. § 1836) ("DTSA"), statutory and common law unfair competition, tortious interference with economic interest, conversion, civil conspiracy to defraud, unjust enrichment, and a request for accounting. Plaintiff requested injunctive relief, damages, interest, and costs. *See* ECF No. 1.

Defendants originally answered the Complaint on February 5, 2018, at which time they were both represented by counsel. ECF No. 5. All parties participated in this litigation through the exchange of discovery. In May 2023, counsel for Defendants withdrew their representation, citing unpaid legal bills and Lee's inability to effectively participate in the litigation due to multiple unsuccessful eye surgeries that impaired his vision. ECF No. 78.

Neither defendant retained new counsel. The Clerk placed Innoas in default and struck its responsive pleading on October 11, 2023. ECF No. 89. Plaintiff moved for default judgment against both defendants on September 13, 2024, ECF No. 102, which was denied without prejudice because plaintiff had not yet moved to strike Lee's responsive pleading or place him in default, ECF No. 104. Pursuant to the Court's directive, plaintiff moved to place Lee in default and strike his answer as a sanction for failure to participate in discovery. ECF No. 105. On February 20,

2025, the Court adopted the Magistrate Judge's Report and Recommendation granting plaintiff's motion, placing Lee in default, and striking Lee's responsive pleading as a sanction for failure to participate in the litigation. ECF Nos. 109, 110.

On March 6, 2025, plaintiff moved once again for default judgment against both defendants. ECF No. 109. The following day, plaintiff filed a corrected motion for default judgment curing a procedural deficiency that was noted by the Clerk. ECF No. 110.

On March 25, 2025, Lee filed two short opposition briefs, one of which was nominally directed at the incorrectly-labeled Motion to Amend, but both of which sought to respond in substance to plaintiff's motion for default judgment. *See* ECF Nos. 111, 112. Plaintiff argued that his failure to participate should be excused due to medical and financial hardship and his *pro se* status following the withdrawal of his attorney. The Court exercised its discretion to grant Lee one final opportunity to either retain new counsel or otherwise resume meaningful participation in this litigation, and denied plaintiff's default judgment motion without prejudice.

After multiple warnings, Lee continued to disobey the Court's Order requiring information regarding his plans to proceed with litigation. *See* ECF Nos. 118, 119. Accordingly, on July 1, 2025, the Court placed both defendants in default, again struck Lee's responsive pleading, and instructed plaintiff to file a third motion for default judgment, which plaintiff did on July 7, 2025. ECF Nos. 120, 121.

For the reasons set forth below, plaintiff's motion for default judgment is **GRANTED IN PART** and **DENIED IN PART**.

## II. DISCUSSION

Fed. R. Civ. P. 55(b)(2) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Defendants were properly served by summons. ECF Nos. 3, 7; Fed. R. Civ. P. 4(b). "It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

### A. Jurisdiction

Before the Court grants a motion for default judgment, it must ensure, *inter alia*, (1) that it has jurisdiction and (2) "that entry of default under Rule 55(a) was appropriate." *Gov't Employees Ins. Co. v. Pennsauken Spine & Rehab PC*, 17-cv-11727, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018). The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 501. The Court has personal jurisdiction over the defendants: Innoas is a New Jersey corporation, and Lee resides in, conducts his business in, and is alleged to have committed the tortious activity at issue in the state of New Jersey.

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Here,

defendants' responsive pleadings were stricken by this Court after it provided several opportunities to meaningfully participate in the instant litigation. Accordingly, the entry of default was proper.

### B.  Causes of Action

The mere fact of default does not entitle a plaintiff to judgment. Instead, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true,' " *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc. v. Gordashevsky*, 558 F.Supp.2d 532, 535 (D.N.J. 2008).

Plaintiff's complaint includes fifteen causes of action. ECF No. 1. Its motion for default judgment presses only eight of those causes of action. ECF No. 120. Because the Court writes primarily for the benefit of the parties, it declines to recite the factual allegations at issue here, and refers the parties to the contents of plaintiff's complaint.

#### 1.  Primary Violation of the Copyright Act (17 U.S.C. §§ 101, 501 *et. seq.*)

"To state a claim for copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) that a defendant copied the constituent, original elements of the work." *Cianelli v. Nourison Industs., Inc.*, 2020 WL 4882500, *3 (D.N.J. Aug. 20, 2020) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)). "In particular, a plaintiff must allege: (1) 'which specific original work is the subject of the copyright claim,' (2) 'that plaintiff owns the copyright,' (3) that the work in question has been registered in compliance with the statute,' and (4) 'by what acts and during what time defendant has infringed the copyright.'" *Id.* (citations omitted).

"Copyright protection is available for 'original works of authorship fixed in any tangible medium of expression.'" *Pyrotechnics Management, Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 336 (3d Cir. 2022) (citing 17 U.S.C. § 102(a)). "'[A] valid copyright,' however, 'extends only to copyrightable subject matter.'" *Id.* at 336–37 (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 408 (2017)). "[A] computer program, whether in object code or source code, is a 'literary work' and is protected from unauthorized copying, whether from its object or source code version." *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1243 (3d Cir. 1983); *see also Pyrotechnics*, 38 F.4th at 336 n.5 ("both source code and object code are copyrightable." (citing *Apple*)). But "Congress expressly excluded certain subjects from copyright protection, no matter how original they might be. Those exclusions include 'any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described.'" *Pyrotechnics*, 38 F.4th at 337 (citing 17 U.S.C. § 102(b)).

Plaintiff alleges that both its POS software and the access keys it provides are copyrightable original works. ECF No. 1 ¶ 57. Certainly, the POS software itself is copyrightable. The access keys present a closer question: whether the keys are standalone creative works, or whether they are more akin to "methods of operation" excluded from copyright protection. Here, rather than

3

resolve a difficult legal question without the benefit of complete briefing, and in light of the fact that plaintiff's allegations clearly warrant relief on other counts, the Court declines to grant default judgment on this count.

        2.      <u>Digital Millenium Copyright Act (17 U.S.C. § 1201)</u>

Plaintiff alleges that "Defendants are infringing upon the Plaintiff's copyrights by selling, distributing, using and offering for sale pirated copies of Plaintiff's key that has been designed or produced for the purpose of circumventing technological measures and/or protection afforded by the technological measures that has been employed by Plaintiff to control access to the full version of its POS software." ECF No. 1 ¶ 98. Plaintiff's claim, in other words, is that Defendants created and distributed pirated keys to enable customers to circumvent its copyright protections—or, "offer[ed] to the public, provide[d], or otherwise traffic[ked] in [a] technology ... that ... is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under" the Copyright Act. 17 U.S.C. § 1201(a)(2).

> A plaintiff alleging a violation of § 1201(a)(2) must prove: (1) ownership of a valid *copyright* on a work, (2) effectively controlled by a *technological measure,* which has been circumvented, (3) that third parties can now *access* (4) *without authorization,* in a manner that (5) infringes or facilitates infringing a right *protected* by the Copyright Act, because of a product that (6) the defendant either (i) *designed or produced* primarily for circumvention; (ii) made available despite only *limited commercial significance* other than circumvention; or (iii) *marketed* for use in circumvention of the controlling technological measure.

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004).

Plaintiff has clearly stated a claim for violation of the DMCA. Plaintiff has pled ownership of a copyrighted software product. ECF Nos. 1 ¶¶ 57, 96. Plaintiff employed technological measures—specifically the restriction of access to the full version of its product to owners of Keys that contain an "encrypted multi-character alphanumeric string" and that both provides access to the end-user and sends registration information to the plaintiff's database for tracking. *See id.* 1 ¶¶ 38-43. Finally, plaintiff alleges that defendants produced counterfeit keys for the purpose of providing unauthorized access to third parties. *Id.* ¶¶ 44-50.

        3.      <u>Defense of Trade Secrets Act (18 U.S.C. § 1836)</u>

18 U.S.C. § 1832 establishes criminal liability, in relevant part, for:

> Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—

4

> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information; [or]
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;

18 U.S.C. § 1836 gives a private cause of action to "[a]n owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce" which may be remedied by injunctive and/or monetary relief. Accordingly,

> To state a claim under the DTSA, a party must allege: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce ...; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret[.]"

*M. Cohen and Sons, Inc. v. Platte River Ins. Co.*, 2022 WL 16838538 (D.N.J. Nov. 9, 2022) (quoting *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021)).

Plaintiff has stated a claim for violation of the DTSA. The contents of the Keys that give the Key-holder access to Plaintiff's software constitutes a trade secret which, as discussed above, Plaintiff took reasonable measures to keep secret. Plaintiff alleged that its POS software is used in multiple states, rendering the sale of access to the software interstate commerce. *See* ECF No. 1 ¶ 103. And plaintiff alleged that defendants misappropriated the Keys. *Id.* ¶¶ 46-48.

### 4. Statutory Unfair Competition (N.J.S.A. 56:4-1); Common Law Unfair Competition[1]

"[U]nfair competition claims under New Jersey statutory and common law generally parallel those under § 43(a) of the Lanham Act." *Cambridge Pavers, Inc. v. EP Henry Corp.*, 407 F. Supp. 3d 503, 509–10 (D.N.J. 2019) (quoting *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 454 (D.N.J. 2009)). Additionally, "the New Jersey Trademark Act, N.J.S.A. 56:4-1 'is the statutory equivalent of Section 43(a)(1) of the Lanham Act.'" *Id.* at 510 (quoting *Harlem Wizards Entm't Basketball, Inc. v. NBA Properties, Inc.*, 952 F. Supp. 1084, 1091 (D.N.J. 1997)); *compare* N.J.S.A. 56:4-1 *with* 15 U.S.C. § 1125(a)(1).

---

[1] Statutory and common law unfair competition are pled separately in the Complaint and briefed separately in the Motion for Default Judgment, but because the same legal standard applies to each, the Court addresses them together here.

"The concept [of unfair competition] is as flexible and elastic as the evolving standards of commercial morality demand. … Generally it consists of the misappropriation of one's property by another—or property which has some sort of commercial or pecuniary value. The misappropriation usually takes the form of palming off another's goods as your own, although the modus operandi is not essential." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 815 (D.N.J. 2000) (citations modified). That is just what plaintiff alleges here. Accordingly, Plaintiff has stated a claim for unfair competition.

### 5. Tortious Interference with Prospective Economic Interest

To state a claim for tortious interference with prospective economic interest under New Jersey law, a plaintiff's complaint must (1) "allege facts that show some protectable right—a prospective economic or contractual relationship"[2]; (2) "claim[] that the interference was done intentionally and with malice,"; (3) "allege facts leading to the conclusion that the interference caused the loss of the prospective gain"[3]; and (4) "allege that the injury caused damage." *MacDougall v. Weichert*, 677 A.2d 162, 174 (N.J. 1996) (internal citations omitted).

Plaintiff alleges that it originally sold licenses (with activation Keys) to the defendants for resale to end users. ECF No. 1 ¶¶ 21-31. Plaintiff's tortious interference claim is based on the premise that "[b]y virtue of Defendants sale and distribution of Plaintiff's POS software with counterfeit and pirated Keys, Defendants have avoided paying the Plaintiff for the right to legally sell and distribute the same thereby interfering with the present and future economic interests of Plaintiff." *Id.* ¶ 139. In other words, plaintiff alleges that defendants interfered with plaintiff's ability to profit from the distribution of access to its software by misappropriating and distributing pirated Keys to prospective customers. Plaintiff alleges that defendants' interference was willful and intentional. *Id.* ¶ 141. And plaintiff alleges facts tending toward the conclusion that the interference caused damage to plaintiff by causing the loss of prospective economic gain. *Id.* ¶¶ 139-140.

### 6. Conversion

"The elements of common law conversion are (1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Rickerson v. Pinnacle Foods Inc.*, 2018 WL 1704788 (D.N.J. Apr. 9, 2018) (citation omitted). As plaintiff acknowledges, "conversion only applies to tangible personal property." ECF No. 120-1 at 19. There being no tangible personal property at issue here, Plaintiff's motion for default judgment is denied with respect to its conversion claim.

### 7. Unjust Enrichment

"The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. A cause of action for unjust

---

[2] "Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some 'reasonable expectation of economic advantage.'" *MacDougall v. Weichert*, 677 A.2d 162, 174 (N.J. 1996).

[3] These allegations must "show that if there had been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Id.* (citation omitted).

6

enrichment requires proof that defendants received a benefit and that retention of that benefit without payment would be unjust." *Goldsmith v. Camden Cnty. Surrogate's Off.*, 975 A.2d 459, 462–63 (N.J. App. Div. 2009) (citation modified).

Here, without rehashing the allegations discussed above, the Court confirms that by allegedly selling stolen, pirated access keys that enabled third parties to access plaintiff's copyrighted computer program without paying the plaintiff for access, defendants were unjustly enriched, and must be disgorged of any ill-gained profits.

### C. Whether Default Judgment is Proper

After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181. The Court addressed the propriety of entering default in detail in its prior opinion denying without prejudice plaintiff's second motion for default judgment, ECF No. 116, and provided defendants with an opportunity to assert any meritorious defense. Now, whereas defendants have failed to abide this Court's orders or otherwise continue their participation in this litigation, the Court has no choice but to conclude that default is due to defendants' culpable conduct and that the continued denial of default judgment would prejudice plaintiff. Any meritorious defense defendants may have had is now forfeited by virtue of this Court's orders striking defendants' responsive pleadings.

Accordingly, the Court **GRANTS** default judgment with respect to plaintiff's claims for violations of the DMCA and DTSA, and for its claims of unjust enrichment, tortious interference with prospective economic interest, and unfair competition. The balance of plaintiff's motion is **DENIED**.

### D. Relief

Having concluded that default judgment is appropriate, the Court now turns to the measure of damages appropriate in this case.

#### 1. Compensatory Damages

To support its damages claim, Plaintiff submitted the expert report of Mr. Stephen Chait, ECF No. 120 at 107 *et. seq.* Plaintiff's expert report contains helpful analysis, but the Court does not accept its conclusions uncritically. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). After careful analysis, the Court broadly agrees with Mr. Chait's damages conclusions, including his exclusion of future lost profits from his damages estimate.[4]

---

[4] While Mr. Chait calculated lost future profits based on his projection of potential growth, he excluded this amount from his ultimate damages conclusion and noted that "The inclusion of this element of damages will be in the discretion of the Court." The Court also varies slightly upward from Mr. Chait's lost profits estimate based on its use of the average cost of USB drives reviewed by Mr. Chait instead of its $5.00-per-drive estimate.

7

In this case, the Court concludes that the appropriate measure of damages is the approximate lost sales value of the lost profits from identified pirated access keys, plus the value of the time plaintiff's principal (Mr. Kang) spent "researching program theft, programming to disable fake keys, preventing updates for fake keys, and implementing unlock software." ECF No. 120 at 116. Based on Mr. Chait's report, 465 pirated license keys were identified, each of which cost plaintiff $400 in lost revenue, less approximately $4.63 for the cost of the thumb drive on which a key would be delivered, for a total lost profit of $183,685. Mr. Chait's report also estimates the value of the time spent programming by Mr. Kang at $150, a rate the Court finds reasonable, and based on Mr. Kang's estimation of 545 hours spent on this process (over the course of several years), reached a total programming cost of $81,750. Together, these estimates total $265,435 in compensatory damages.[5]

### 2. Attorney Fees & Costs

Plaintiff requests attorney fees and costs as permitted by, for example, the DMCA and the DTSA. Plaintiff' requests $309,235.73 for the services provided by the Choi Law Firm and $33,985.73 for services provided by the Song Law Firm, totaling $343,221.46, each inclusive of costs incurred. "The two approaches for determining the reasonableness of an attorney's fees request are the lodestar method and the percentage-of-recovery method. Each is appropriate in a particular type of case. A court, first, must categorize the type of action before it and then apply the corresponding method for awarding fees." *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 431 (D.N.J. 2004) (citation modified). "The lodestar method, which multiplies the number of hours by an hourly rate appropriate for the region and the lawyer's experience, is proper in statutory fee-shifting cases." *Id.*

By the Court's calculation, the records submitted by the Song Law Firm reflect 101.5 hours of work charged (excluding considerable write-offs). *See* ECF No. 120 Ex. 6. For this work, the Song Law Firm requests fees in the amount of $31,873.25 excluding costs incurred, equating to an effective hourly rate of $314.02 per hour. Defendants' counsel from the Song Law Firm, Roy H. Mossi is a senior attorney with decades of experience in New Jersey (and other) state and federal courts. This rate for a senior attorney is reasonable and appropriate in this jurisdiction. *See, e.g., Mister Softee Franchile LLC v. Giannos*, 2025 WL 593597 (D.N.J. Feb. 24, 2025). The Choi Law Firm requests $275,250 in fees (excluding costs). It charges a reasonable rate of $300-400 per hour for its attorney work, and averaged $325.93 per hour of work charged on this matter. *See id.*; ECF No. 120 Ex. 7 ¶¶ 14, 16.

While counsel's rate is reasonable, the Court must also "determine whether Counsel reasonably expended their time while working on the case," and may "reject fees for any hours that are 'excessive, redundant, or otherwise unnecessary." *Fruit Flowers, LLC v. Jammala, LLC*, 2016 WL 1553725, *2 (D.N.J. Jan. 6, 2016) (citing *Blakey v. Continental Airlines, Inc.*, 2 F. Supp. 2d 598 (D.N.J. 1998). On the one hand, this was not an ordinary default judgment case: the parties exchanged discovery, deposed witnesses, engaged experts, and appeared for court hearings over the course of the seven years of this litigation. But on the other hand, the parties never reached

---

[5] The Court declines to exercise its discretionary authority under N.J.S.A. 56:4-1 *et. seq.* to award treble damages, or under 18 U.S.C. § 1836(b)(3).

8

the merits in their briefing—there were no motions for dismissal or for summary judgment prepared by either party, and the legal and factual questions presented, while complex, are not exceptional.

"A reasonable fee is one which is adequate to attract competent counsel, but which does not produce windfalls to attorneys." *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (citations omitted). It is this court's duty to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* at 1188 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

> Attorneys seeking compensation must document the hours for which payment is sought with sufficient specificity. More specifically, [Third Circuit] jurisprudence has established that a fee petition is required to be specific enough to determine if the hours claimed are unreasonable for the work performed. It is an established proposition of law that where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996).

Here, the Court accepts as reasonable the time charged by the Song Law Firm, which totals 101.5 hours and accounts for considerable write-offs by the firm. Accordingly, the fee award applicable to the Song Law Firm is $31,873.25. The Court reduces the time charged by the Choi Law Firm, which requests fees for 844.5 hours of work, to 550 hours. This reflects a roughly 35% reduction in fees, and is intended to adjust for what the court regards as unnecessary billing for vague, nonspecific, or indiscernible tasks.[6] At the Choi Law Firm's $325.93 average hourly rate for this matter, this results in an award to the Choi Law Firm of $179,261.50. Together, these fee awards total $211,134.75.

The Court also grants the Song Law Firm's request for costs in the amount of $606.75 as reimbursement for the court reporter's fee at the deposition of Defendant Noah Lee. ECF No. 120 Ex. 6 ¶ 15.

The Choi Law Firm's request for $33,985.73 is not explained by the firm's affidavit of attorney fees and costs, ECF No.120 Ex. 7. As such, the Court will not grant that request at this time, but will permit plaintiff to file a supplemental affidavit describing the fees and costs incurred by the Choi Law Firm no later than **Monday, September 1, 2025**, at which point the Court will consider an additional award for costs incurred.

---

[6] *See, e.g.*, ECF No. 120 at 195-97 (6.75 charged hours in April 2018 for "Worked on answers"); *id.* at 231-32 (11.5 hours in August 2019 for "Worked on discovery"); ECF No. 255-56 (10 hours in August 2020 for "Worked on discovery" or "Reviewed discovery"); ECF No. 120-22 (22.5 hours in July 2021 for some variation of "File Review" or "Case Review").

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that plaintiff's motion for default judgment is **GRANTED** with respect to its claims under the DMCA and DTSA, and for unfair competition, tortious interference with prospective economic interest, and unjust enrichment. The remainder of plaintiff's complaint is **DISMISSED**.

The Court will enter judgment in plaintiff's favor in the amount of **$265,435.00 in compensatory damages**, together with **$211,741.50** in legal fees and costs, for a total of **$477,176.50**.

Plaintiff shall file a supplemental affidavit describing the costs incurred by the Choi Law Firm no later than **Monday, September 1, 2025**, at which point the Court will consider an additional award for legal costs incurred.

**DATE:** August 11, 2025

WILLIAM J. MARTINI, U.S.D.J.